The next case on our call the docket is agenda number 13, case number 109693 Heather Johnston, appellant versus Andrew Weil, appellee's counsel for the appellant. Thank You Mr. Chief Justice. Good morning Your Honors, my name is Court and Counsel. This case is about the disclosure of protective personal mental health psychiatric information for purposes for which disclosure was never intended. The case asks as a matter of statutory construction is this psychiatric information, this mental health information, like all other mental health information governed by the Mental Health Confidentiality Act, and it asks the public policy question, does the decision to seek custody of one's children in a divorce matter carry the price of the wholesale waiving of confidentiality to private psychiatric information? What possible public policy argument could be made in support of such a determination? Ms. Solo, is it true that Dr. Amabile, is that how you say it? Amabile. Amabile was not a treating physician? No, she was a court-appointed psychiatrist for evaluation only. So why would that be considered a mental health evaluation as opposed to a custody evaluation? Because she was a psychiatrist asked to do evaluation and testing. And testing included psychological testing. She was evaluating for fitness to have, there were all kinds of issues, custody and visitation. But it was a court-appointed psychiatrist, not an educational specialist, not any other type of specialist, specifically appointed for her expertise in the psychiatric field to do psychiatric analysis and evaluation. I used the wrong word, evaluation. I don't mean Freudian analysis. I mean evaluation of the parties and their children. In the same way that you do a fitness evaluation in the McGreal case, a physical fitness as a police officer. So this was fitness evaluation in terms of custody and visitation. Was there a therapeutic relationship with the client? In no court-ordered fitness evaluation is there ever a therapeutic relationship. A court-ordered evaluation is the antithesis of what, by the way, is something never defined in terms of therapeutic relationship. And I'm assuming that when people say therapeutic relationship, they mean the kind of you're on the couch and you have a therapist-patient relationship. But that's why the statute looks at this separate, distinct type of evaluation where you have a psychiatrist, which is in 10-4A of the mental health statute, where you have a psychiatrist who is appointed for evaluation purposes. Is it always true that a psychiatrist is appointed or a physical therapist could be appointed to do these evaluations? There are different types of people, depending. If you look at the 604B statute, what it says is that the court can appoint someone to give it advice. It doesn't say in what specific area. In my own experience, in terms of divorce litigation, you will frequently get an educational specialist. You can get a doctor who's appointed when the issue relates to the children's medical needs. You sometimes get a visitation specialist, someone who is appointed strictly to observe visitation between parents and then report to the court as to how the parents and the visitation is going. So the intent, then, for the evaluation results should be or could be used for court documentation? Correct. And so, therefore, it wouldn't be private. The people know when they're participating in this kind of an evaluation that it could be used in the court proceedings and, therefore, would not be closed proceedings. Well, what participants know, and this is why one needs to look carefully at the act, what the participants know is that it is going to be used for the purpose of that litigation, of that specific intention. That's why NORSCOG is so important. If you look at NORSCOG, which this court ruled upon, one of the, it was based, in part, the court references the criminal code and says that, pardon me, in analyzing the criminal code and court-ordered evaluations in that context, it was not, therefore, subject to redisclosure. And looking at the act, you will see it has the very same language as 604B. If you look at section 104-15, it specifically says, under NORSCOG, that the people who get the report are the person or persons conducting evaluation,  the state and the defense. In other words, just like 604B, these reports are submitted to the court and the attorneys involved. Is there same language that it's no redisclosure? That's what NORSCOG found. That just because it's given, this court found in NORSCOG, just because the purpose, the reason for the disclosure is just for the use in that criminal case, and just because it's given to the defense and the lawyers in that case, that doesn't waive confidentiality for other proceedings and for other areas. Ms. Sola, doesn't NORSCOG, in a way, support the opposing position? Because 104-14A, right, that's what we're talking about, the Code of Criminal Procedure, specifically states that information gathered during a court-ordered fitness examination shall not be admissible against the person or defense. It goes on from there. And in this case, you admit that this is not a therapeutic relationship. And the Confidentiality Act, doesn't that only apply to therapeutic relationships? And as, you know, just to get all the questions out, and doesn't Section 10, unlike the Code provision, specifically of the court-ordered fitness examination, or by a therapist in the course of an examination ordered by the circuit court. In addition to that, I mean, add, I know it's a long question, but add to that the fact that, as Justice Burke points out, the, you know, the person was told that these evaluations could be used. I know your position is only used in that case, and that's the only thing they're waiving. But I know it's a long question, but I think it's best to get it all on the table and see what your response is. And I agree, Your Honor, because it all does tie together. So there has to be this, how do you bring it all together into one, into one package, so to say. And what I would ask the Court to do is first look at the language of the statute itself, and this is towards answering Your Honor's question. It's just that we have to bring it together. If you look at Section 10A1, you really have to look at the language, excuse me, 10A4, you have to look at the language very carefully. Because what the language says is that records and communications may be disclosed and then follow in a civil proceeding in which the party, the recipient is a party, provided there was the proper admonition. And then it says, and this is something the appellate court didn't add or even look at, the rest of that paragraph says the following. Such records and communications shall be admissible, again we're talking about admissibility, the same way that we're talking about admissibility in the criminal statute, okay, it's limiting the admissibility, only as to issues involving the recipient's condition, and only to the extent that these are germane to such proceedings. And the such proceedings refers to the proceedings in which they were when you have a court-appointed psychiatrist is very narrowly subscribed. It doesn't say it's disclosed. In fact, just like in the criminal statute, it talks about the admissibility and it limits the admissibility. And those proceedings, though, but we're talking about in subsequent proceedings now, aren't we? Right. So what we're arguing is that what the court said in Norskog, I didn't mean to cut you off, I'm sorry, Your Honor. I was just wondering, wouldn't it go not to its admissibility in subsequent proceedings, but the relevance of it or the weight that it would be given by the court? I mean, it's like, you know, in tickets, you know, if you get a lot of tickets driving the car in a subsequent proceeding, isn't that record? But that's exactly what the Supreme Court looked at in Norskog. That was the very question. Even if Norskog, even if the criminal code limited it to, talked only about the admissibility issue, just like it talks about admissibility here. The question for Norskog was, yes, we have a criminal statute that talks about admissibility. And if you notice, I'm going to take a little sidetrack here because I think it's important. If you look at the criminal code 104-14B, which is one of the things cited in Norskog, it says, except as provided in paragraph A of this section, no statement made by the defendant in course of examination will be admissible regarding criminal matters. It didn't, by the way, and if you look at paragraph A, it talks about the records also. The concern in section B was about self-incrimination, really. And it was about criminal matters. The court in Norskog looked at this and said, fine, this is about admissibility. But what about disclosure? Disclosure of confidential, it is this information that has been gathered by this expert that the court appointed. He gathered mental health records. He did testing. This court knows what's involved in a fitness examination. I just have one more question. I'm confused about these kinds of evaluations. In this particular case, was this evaluation in the court record? No. These evaluations are never placed in the court record. In fact, if you look at Judge Hamilton, Morgan Hamilton. Are the findings reflected anywhere in the record? Does it show what the court based its decision on? Normally not. They will not. They might say something like based on the, it's very much, let me back up. Does the expert testify? Sometimes. In this particular case, not. Just like in Norskog, there was no testimony. There was no, because they settled the case. So nothing was ever disclosed, actually. But generally speaking, maybe not in this case, that information is in the record. Let me repeat again. The actual report never goes into the record. Never. Never. It is kept separately by the judges, at least in Cook County. You know, I miss speaking because I know Cook County. But the testimony of the expert would be in the record. Right. The testimony would be in the record. And that's not impounded in any way. People could go to the record and read it. And so it would be public. In the same way that if you look at guardianship proceedings, where the expert report for a guardianship proceeding is not placed in the record, there is a record when there is testimony. Sometimes we don't have testimony. In cases where we don't have testimony, you still read into the record what the findings of the expert was. You can't use it, though. And I would point to Norskag, which specifically the court gives me a moment. In the Norskag case, the court cited with approval that the court cited with approval of Norskag that the legislative care in limiting permissible disclosure strongly suggests that we may not assume that eliminating confidentiality in one judicial setting means eliminating it in all settings. In this particular case where it was never even, very much like Norskag, because the case was settled, the report never went into evidence. There was never any witness testimony regarding it. In this case, even Judge Hamilton, the second judge who was examining the issue, stated this report is not meant as a public document. In her order, she writes, this report is meant strictly to advise me. It is not a public document. It is not subject to disclosure. Norskag was talking about disclosure. If it was talking about admissibility, then Norskag would have not have to deal with the issue that it was before it, which was a discovery issue. Because we know discovery, you get information that may not necessarily be admissible, but it may lead to admissible evidence. Norskag was a discovery case, and they said, no, this is another procedure. It's another legal proceeding. The information that was gathered by this doctor in the course of a court-ordered evaluation was gathered strictly for the other proceeding, and it's not even discoverable. I'd like to kind of address, and I don't know if I've really answered your question, but I've tried to pull it together. Let me ask another different question. Can one refuse to be interviewed by a psychiatrist in these cases in order to do so? That was an issue I was going to bring up. No. And the consequences? The consequences are contempt of court, because this is court-ordered, and I would dare say that the consequence will be if you refuse to undergo the fitness for custody evaluation, the judge will say, then you must not be fit to be the parent. If you look at the Norskag case and the criminal case, at least there you have an opt-out option. In the criminal code it says you don't have to cooperate. If you don't cooperate, you can still have your insanity defense, but, et cetera, et cetera. So there are limitations, but there's always an opt-out. In a 215 exam, which would be another kind of court-ordered mental exam, you can only order that if you've placed your mental health at issue. Here the legislature says you haven't placed your mental health at issue by asking for your kids. But a judge can say, I don't care, I'm placing your mental health at issue. You can't opt out. If you look at 604B, there's no opt-out. But I don't think the judge would say that, because it isn't for the judge's purpose or the parent's purposes. I think the evaluation is what is in the best interest of the child. So the focus is really on the child's best interest and not the mental health issues of the parent. But we're looking at the mental health issues of the parent in order to determine what's best for the child. But the judge doesn't place the parent's mental health issues in issue. It's for the best interest of the child. The focus is on the child. We get there by placing their mental health at issue, by saying we want you to be subject to a mental health exam to testing, psychological testing, to evaluation. The purpose of which is to determine the best interest of the child. But in the... Just a minute, Ms. Solo. You know, Justice Thomas asked you a long, multi-part question. I don't know if you had an opportunity to finish answering it. And I'm going to have to ask you what part you feel has not yet been answered, because I've tried to tie the whole thing together. You think in answering the other questions? It just got a little bit, I thought, off track a little with the number of other questions being asked. But if you feel you answered it, that's fine. I would prefer to satisfy you. Let me ask you a different question here. I understand this came to the appellate court as a certified question, and that's what they're restricted to answering. But they did at least mention the fact that there were other options available to the plaintiff in this case. I think they mentioned orders of protection. How do you respond to that, and why wouldn't that be sufficient? All right. First of all, as a practical matter, the change in the rules for the circuit court came about after this case was before the court. I don't believe that the option that has been offered is a sufficient option. What the rule of the only circuit court of Cook County, no other court, says that a judge may issue a protective order. Issuing a protective order comes with a certain discretionary balance. It doesn't afford a person an absolute right to protect their mental health information. Not only that, we don't know under what circumstances a judge may or may not issue it. If, on the other hand, the argument is, well, they'll become pro forma, and every time you have this, there will be a protective order, well, that only proves the point of this, that this is mental health information that needs to be guarded. Otherwise, why have a protective order? The other problem with that is while the litigants themselves may or may not for various reasons agree to a protective order, and that will cause litigation, there are other therapists involved, the ones that you collect their information from. There are children involved whose educational information is there, and even defendants can see that it includes all that kind of information. There are all kinds of collateral sources who may believe that they are talking to this doctor or submitting information to this psychiatrist strictly for the purpose of a custody evaluation. They don't ask for a protective order. They don't even know if they can. And then somewhere down the line, they find that this document somehow didn't get a protective order, and now it surfaces. So there are a lot of people who aren't really protected by this, not even the children. We have to assume that even if the parents don't want a protective order, that there will be a child rep who will ask for a protective order if there's anything about the children in there. But that's a lot of assumptions that a protective order doesn't cure. Ms. Solo, just going back to Norskog, a mental fitness exam was conducted there, and here there was no mental fitness exam. Isn't that distinguishable? It was a mental fitness. It was mental fitness for custody. The Norskog. A mental fitness exam was conducted here as opposed to an exam or an evaluation between the parties, the family members, and all? Wasn't there supposed to be an evaluation of all that? This specifically, the order specifically had testing as well, mental testing. They did diagnosis, testing, evaluation. If the court looks at the record, it's at least a 47-page document that analyzed. But it's not in the record, you said. No, I mean there was a reference in this record to the report being at least 47 pages. I didn't mean that the report was in the record. It ran the gamut of mental health information, analyzed testing. They all were subjected to testing. The children's educational records. And at the end, taking all this information, the psychiatrist uses her expertise, I'm sorry, I see my time is up, to evaluate for fitness for custody and visitation. I apologize for going over the time. You had a lot of questions. Thank you. I hope I answered them. Thank you. Good morning. My name is Joseph Monahan. I represent the defendant appellees Burton Hochberg, Karen Pinkert-Leib, Andrea Muchen. Counsel are present for the other defendants. I'll speak for everyone. Your honors, counsel, records, communications, and information shared with the court's witness appointed to section 604B are not confidential. Even when the court's witness happens to be a mental health care professional. That is what the appellate court decided. And we respectfully request that you affirm the appellate court's unanimous decision. Support for this proposition is found in the plain language of 604B. The interpretation of 604B is found throughout the circuit court rules who have addressed this issue. And the longstanding precedence that the information obtained with the intent to share it with non-agent third parties is not confidential. The strong public policy arguments also argue for the finding that 604B information is not confidential. Mr. Monahan, is it true that these documents are never in the court record, only the testimony of the witnesses who participated in it? That is not my experience, your honor. I think to put this issue the way it should be looked at is the court, in looking at difficult custody issues, oftentimes will look to an expert to a point, and that's a 604B witness. That witness is the court's witness, and under the rules, there are three things that have to happen. First, the 604B witness goes out and interviews interested people. It could be the spouses, it could be the grandparents, it could be the neighbors, it could be the teachers. It's information that's going to be helpful to address the issue which is before the court. Once that professional goes out and does that investigation or gathers information, they are obligated to put that in a report, a written report, and present it to the court. Not only do they have to present it to the court, they have to give it to the attorneys. Both sides of the attorneys, and in the case of child reps or guardian items, those are also provided. There's no prohibition for it being in the court. Counsel suggests that the practice is that they don't appear in court, but indeed, in other cases, we've actually found the reports in the record. But in this case, it wasn't. The parties settled. It was not in the record as far as I know. That's correct. So for the purposes of applying the exception to the Confidentiality Act, if you presume the Confidentiality Act applies here, does it matter that the plaintiffs were never informed of the information that could be used in subsequent civil proceedings? The reason I believe that the Confidentiality Act does not apply is because there's not a therapeutic relationship, as some of the other questions that came up revealed. The 604B professional is the court's witness. It's not acting as a therapist. It's not providing counseling. It's not providing medication. It's not providing a therapeutic relationship with any individual interviewed. What it is is it's a court witness who's designed to help the court in making up a decision, in coming to a decision. If you were to suggest that the Confidentiality Act applied to witnesses that the 604B interviewed, it would be impossible. It would be totally impractical. So for example, if the 604B witness interviewed a grandparent or a teacher or someone else in trying to figure out information for the court, and they found information that would be very damaging, you wouldn't share that. You couldn't say if somebody said, for example, the spouse is now living with a sex offender. That would be terrible information. And the person who provided that information couldn't say, but don't tell anybody it's confidential. If that were the standard, the obligation of the 604B witness would change from being the court's witness to that individual who provided that information. If the 604B expert found that they were driving while they were drunk, or they were using corporal punishment, that information is critical for the best interest of the children. And it cannot be considered privileged or subject to the Confidentiality Act. Is there any limit on the disclosure of that information, counsel? Judge, there doesn't have to be. As, for example, in the Could you, I'm thinking, you know, if you had some high visibility people, could the evaluator go on Dr. Phil and talk about all the dirty dug up on these people? It's an excellent question, Your Honor. And we deal with private information all the time. Oftentimes in custody disputes or in divorce and domestic relations, there might be millions of dollars at stake. There might be people who have money in closely held corporations, may own certain real estate that's very important. And I'll tell you what the lawyers do when there's very private information. They get protective orders. When we're purchasing businesses, we get confidentiality agreements that say, you can only use this information for that purpose. We as lawyers, we as advocates, protect private information. That private information doesn't mean it's confidential or subject to the Confidentiality Act. What it means is it's private information that lawyers have to protect. And so they do. They take the necessary steps to make sure that that private information is kept private. And the court looked at that, the appellate court looked at this in the grand jury case that we cite in our materials. The four elements that are necessary in order to have a privileged communication. The appellate court found clearly it didn't even meet the first standard under that four-part standard because the information was not to be kept confidential. By definition, the 604B witness gets the information, shares it in a written report to the court, and it's shared with the other attorneys. Just like in 215s. And just like the reviewing courts have found for psychiatric examinations in Rule 215s, those are not confidential. The same process applies. The court appoints a psychiatrist, the psychiatrist examines, and the information is shared with the individuals. Can there be an argument made, or are there any cases that would indicate, excuse me, that when 604B says the advice shall be in writing and made available by the court to counsel, those are words of limitation as to who should have access to the report that is counsel? Judge, I think you have to look at the plain language of the statute. There is no mention of confidentiality in the statute. If the legislature wanted to have this information to be confidential, it could have stated so, but it did not. So I think it's up to the lawyers, it's incumbent upon the lawyers to protect the private information and get a protective order when needed. And that's exactly what Cook County decided in changing their rule during the course of this litigation. Does affirming the decision, excuse me, of the appellate court have any implication or implicitly overrule our decision in Norskog? Not at all, Your Honor. Norskog has absolutely nothing to do with this case. Norskog was an individual who decided to ask for the insanity defense. It's an affirmative defense that goes directly to the defendant. During the course of the litigation, that defendant decided not to use the insanity defense and pled guilty. Who has control over that information that was shared? But what kind of information was it, Mr. Monahan? Was it a mental health examination with a one-on-one, or was it for the purposes of, you know, I mean, what were the purposes of it? Was it the same exam? No, it's not at all a 604B. This was an individual defendant who says, I believe I'm not guilty of this crime because I was insane at the time of the receipt. But what kind of exam did he have? It's a fitness examination. Under a different statute? Under the criminal, the strict rules of the criminal code. So it isn't a 604B? It's not a 604B at all. So when you look at Norskog, once the defendant said, I am not going to plead insanity anymore, he controls what happens to that information. The statute specifically says you decide whether that information saw the light of day. It never saw the light of day. And therefore, it was the defendant that had that information. In 604Bs, the witness is the court's witness. And if a spouse said, I don't want you to tell the court this information, the 604B witness has an obligation to the court. It's the client is the court in the 604B judge. So that's the huge difference between Norskog, and it has no application here in my opinion at all. The local circuit court rules that we have mentioned in our pleadings support the plain reading of the statute. In DuPage County, the rules address specifically what I believe Justice Thomas and Justice Burke said about there being no therapeutic relationship here. The 604B does not function as a therapist. The information that is exchanged with the therapist is not confidential information. That is supported by the numerous other circuit courts out there who have addressed it. If we look at the longstanding precedents that we've cited in our materials, the interpretation by the local rules and the others is consistent with this court's finding that once you share information with one entity with the specific intention to share it with non-agent third parties, that is not confidential as a matter of law. And we think that that's very important in looking at the different cases that we have cited in our materials. Finally, I want to address the public policy arguments. As I've indicated, the 604B witness's duty is to advise the court. The court is the client. And if this 604B witness gets information that's critical to the best interest of children, that information must be shared. It cannot be considered confidential at all. The 604B is a legal process. It's not a clinical process. There's no therapeutic relationship. The reason that the 604B witness and the interviews, the people that they are interviewing are together, is because there's a court order saying go cooperate with this court's witness. They're not a fact finder. The 604B expert is not a fact finder. They are an individual who has special skills that the court has chosen to assist it in making a decision. The people interviewed are not recipients of services. In fact, in the plaintiff's complaint in paragraph 49, the parents are considered, quote, collateral sources of information. They are not recipients of services protected under the Mental Health Confidentiality Act. We think that because of the plain language of the statute, because of the clear and long-standing precedence of this court and the inter-meeting reviewing courts, we believe that the strong public policy reasons that are clearly defined and would only result in more litigation. If this court were to find that this information was confidential, we would be in circumstances like we are today, where this case has to go all the way to the Illinois Supreme Court because someone is saying somebody said something that shouldn't have been said, that it's confidential. And it's just going to spur more litigation, and frankly, in the domestic relations arena, they do not need more tools for litigation. Mr. Monahan? Yes. Excuse me. I want to make sure I understand the background in this case. The dispute over this information arose in an original custody case, is that correct? That's correct. And did not the trial court judge order the parties and the counsel not to disclose the information? There was a court order that said in one of those instances that the information that was available in the 604B was not discoverable in the other case. And so, Judge, that would support the notion that lawyers can go in and get a protective order to protect private information. I'm just trying to understand the facts in this case, in the original custody case. Do I understand you to say the trial court did or did not order it not to be disclosed? It was not discoverable in the second case. Really what this litigation arises out of is a law division case in which the plaintiffs are claiming that there was a breach of confidentiality. We filed motions to dismiss saying that one of the clear elements of the cause of action doesn't exist because it's not confidential information. So the issue before the appellate court was whether 604B records, communications, and information are confidential when the 604B witness is a psychiatrist or other mental health provider. Our position is it doesn't matter, because by virtue of the fact that the court appoints a witness with the intent to share that information with non-agent third parties, it's impossible to have it be confidential. And it doesn't matter whether the 604B witness is a psychiatrist, a mental health provider, a special edit consultant, it's the issue is who does the duty of confidentiality go to. And we think that the statute is very clear that the 604B goes to the court. And not to people that they interview. So that's how it arose in the context of that litigation in the civil case. But Mr. Monahan, the question of confidentiality, so it's confidential only to the court? Or that word just shouldn't be used? It's available to the court for its court's use, but does the statute say it's confidential? No, it doesn't. The statute never says, uses the word confidential justice. It's the witness, it's a witness to the court to assist the court. And the other important thing is that it's available, that witness is available to be examined, cross-examined, present information to the court at any time by any party. In their written report, and so that's why it's very different than cases like Norskog where here you have an obligation. In Norskog, Dr. Marcos had no obligation to provide a written report to the court unless the defendant decided to go forward with his defense. Here we have no, it doesn't apply here at all. So we would respectfully request that this court affirm the appellate court's ruling and find that they are not confidential. Thank you very much. Thank you, Mr. Monahan. I'd first like to clarify the question that Your Honor asked regarding the factual matters here. This arose as follows. In the initial proceeding, a 604B evaluation was ordered, and Judge Figueroa, after receiving the document and giving it to the two attorneys, told them they could not disseminate the document. Subsequently, they settled the case, the document never went into evidence, there was no testimony, and it rested there. In a subsequent case unrelated to the first case, the litigants attempted to re-disclose, and I use the word re-disclose purposely, the information from the first case, even though it was never disseminated and they were told not to disseminate it, they attempted to re-disclose it in the second case. In that case, the judge also found that this was just for the first case itself, it was never meant for the second case. And I purposely use the word re-disclosure because I think there's a bit of confusion here. Mr. Monahan's argument seems to imply that the plaintiffs are saying, in the middle of this 604B evaluation, they can say, oops, confidential, you're the evaluator, you can't say anything that tells us anything. You can't tell the judge anything that I've told you. That's not the issue before this Court. A 604B is a court-appointed expert, psychiatric expert in this case, under the Court's order and everybody's order to comply, and they give that 604B information, and that information is transferred to the judge. The question before the Court is, is this re-disclosable for other purposes and for other proceedings? There is no allegation here that at some point in the original proceeding, the plaintiff said, oh, wait, we don't want you to disclose this. It's very much like the proceeding in Norscot. Norscot has the mental health issue, where the respondent there had a relationship with the mental health official, you know, a person. There was no relationship with the doctor there. He had been appointed strictly, there were two issues in Norscot. There was a 10A1 issue that related to old therapists that Mr. Field had had. That was a first issue, and the Court had said that under 10A1, since they never testified, so that's where there was a therapeutic relationship. But it wasn't a 604B. It was, well, 604B is what 10A4 calls a mental health person appointed by the Court. So whether it's called a 604B or a 215, there are various statutes all over that allow for the appointment of an expert. But the expert in Norscot, the one that they did the questioning of, and he said, I only warned him that it could be used for the purposes of the criminal case, there was no therapeutic relationship there. But the difference there was that the defendant there could tell the health professional, do not disclose anything, and here, I mean, he didn't go forward with his insanity defense. And so it wasn't, no report was given, but in the 604B, even if the plaintiff didn't want it to go forward, it would have. Under Norscot, actually, the report did go through. There was a report, it was submitted to the Court, that's what they were seeking. There was a plea bargain and things settled, but there was a report, and the report was issued. And it was a report by a psychiatrist, which is why I keep going back to the language of the mental health statute. To look at 604B is the same thing as looking at 215. 215 allows for a variety of different examinations. But that's one of the varieties that is allowed is a mental health examination. And if it's a mental health examination, then you have to look to the mental health code to see how we treat it. In the same way, when a 604B, which can be a variety of evaluations, when it becomes a fitness evaluation, and if you look at 10A1, and I know I'm sounding a little scattered, but I want to go back to what the legislature said. Any pleading at all under the Marriage and Dissolution Act. So normally what one pleads in marriage and dissolution, you plead I am a fit and proper person to have custody. The legislature says that's not putting your fitness into issue, your mental health fitness. Nevertheless, a judge can put your mental health fitness, can do a mental health evaluation, and I know Mr. Monaghan made it sound like it was just an interview when you talk to people, but the order specifically said evaluation and testing. Trust me, you don't spend $10,000 to have a psychiatrist call up the neighbors. The order said testing and evaluation, strictly psychiatric. So counsel, does it make a difference, does it make a difference who does the report and what the court orders? In other words, if the court orders an evaluation from a social worker or, you know, somebody that's a nurse or something, there's one standard, but if it happens to be a psychiatrist, it's a difference, it is confidential, or am I misunderstanding what you're saying? When we use the word confidential, again, we're arguing it's not subject to re-disclosure. So, but the question that I think is really the question is, if it happens to be a psychiatrist who's ordered to do psychiatric services, evaluation and testing, does that come under the mental health code, whereas if it's a visitation supervisor, it doesn't? I believe that's the question. There's absolutely no exclusion. It says all records and communications shall be confidential and shall not be disclosed except as provided in the act. And it goes on to define what those communications are, so that any time there are communications that arise in the mental health context, we have to look here. And then 10A4 tells us, well, what do we do when it's a court-appointed psychiatrist? There's no therapeutic relationship. They're strangers to each other. They're always, in any court-appointed, it's going to be no therapeutic relationship. So if you say there has to be a therapeutic relationship for this act to apply, then 10A4 is moot. But the statute recognizes there will be times when there's no therapeutic relationship because a court has said, talk to the psychiatrist. In that case, you have to look at what 10A4 says. And look at the results of those conversations, evaluations and testing with the court-appointed psychiatrist. Those results can only be used in such proceedings, in the proceedings in which they are ordered. The question here is redisclosure. And the act specifically says any time you want to disclose, you have an affirmative obligation to find that permission to disclose in the Mental Health Act. There was no, absolutely no affirmative action or statute or anything that allowed the redisclosure, not the initial disclosure. This idea of third-party non-agents, it doesn't exist in the act. Client doesn't exist in the act. The act is very specific. It talks about communications between a psychiatrist and a person who's receiving the service. And it defines a service as evaluation and testing. Confidential communication means any communication made by a recipient or other person to a therapist or in the presence of other persons during or in connection with providing mental health or developmental disability services to a recipient. So that makes that a confidential relation, information. But if it isn't made in that therapeutic context under the Mental Health and Developmental Disabilities Confidentiality Act, it doesn't become confidential. Well, what it says is this, you have to, there's the rest of the definitions, too. When you have these communications, and they arise in the context of not your normal therapeutic relationship, but when they arise in the context of a court ordering you to talk to a psychiatrist, that's putting it in short term. When that happens, you are still considered a recipient, and these are the rules that apply. And the rules that apply in the narrow spectrum of when a court tells you you must engage with this psychiatrist. For services. For services. Services meaning evaluation and testing. That's the definition. It says evaluation. Examination and evaluation. And the order said evaluation. So the act says when you're in this narrow, narrow corridor that talks about you're being ordered to engage with a psychiatrist, what happens then? Because you're doing it by court order, not voluntary. What happens then? So the court says, okay, you'll reveal everything to the psychiatrist, you'll give the records that are there, you know, you'll talk, you'll do the testing, the multiple personality testing, everything that goes. But then they can only use it for that proceeding, for such proceeding in which it was ordered. And the question before this court is redisclosure. It's not the initial disclosure. It's redisclosure. Can you then take it and willy-nilly say, well, you obeyed the court order, you're stuck, now your private information is public. I see my time is up, and unless the court has further questions, thank you so much. Case number 109693, Heather Johnston et al versus Andrew Weal et al.